

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1927 | **DATE** | 7/18/2001 |
| **CASE TITLE** | Consolidated Rail vs. Chgo Southshore & South Bend Railroad Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Summary judgment is entered in favor of the defendant, Chicago Southshore & South Bend Railroad Co. and against plaintiff, Consolidated Rail Corporation.

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONSOLIDATED RAIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 01 C 1927 |
| | ) | |
| CHICAGO SOUTHSHORE & SOUTH BEND RAILROAD CO., | ) | DOCKETED |
| | ) | JUL 1 9 2001 |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on cross-motions for summary judgment. Consolidated Rail Corporation ("Conrail") seeks summary judgment vacating the award of an arbitration panel. Chicago South Shore & South Bend Railroad Company ("SouthShore") desires summary judgment confirming the arbitration award. For the following reasons, we grant SouthShore's motion and deny Conrail's motion.

BACKGROUND

In September 1969, predecessors of Conrail and SouthShore entered into a contract concerning various railroad operations. The contract was amended in May

1990 to include various provisions. One of those provisions, a "reclaim" clause, stated that:

> All empty cars supplied by SouthShore, except those cars supplied in accordance with Car Service Rule 16, shall be subject to full car hire reclaim from the time of interchange until actual placement at Bethlehem Steel Corporation.

(Arb. Dec. at 2.) This clause entitled Conrail to reclaim certain payments of car hire it made to the SouthShore on empty cars supplied by SouthShore and switched by Conrail. However, neither the 1990 amendments nor the 1969 agreement specified the amount of time Conrail had to submit claims for reclaim.

Conrail later attempted to submit a claim for reclaim on cars furnished by SouthShore between January 1992 and April 1998. SouthShore contended that the claims were time-barred. Pursuant to the agreement, the parties submitted the dispute to an arbitration panel which rendered a decision in favor of SouthShore on November 22, 2000.

The panel's decision began by identifying the reclaim clause as the operative provision of the agreement. (Arb. Dec. at 2.) Observing that the clause lacked any specific term as to the amount of time to submit reclaims, the panel deemed such a term necessary in order to give effect to the intent of the parties. (Id.) The panel rejected the notion that the parties intended there to be no time limit for Conrail to submit a claim

and for SouthShore to allow a claim. (Id.) To entertain this notion, the panel said, would "frustrate the clear intent of the parties that an otherwise valid claim for reclaim under Section 5(c) would be honored." (Id. at 2-3.)

Once it concluded that a time limit was a necessary term in the contract, the panel set about determining "what is a reasonable time." (Id. at 3.) It rejected Conrail's suggestion of 10 years as excessive in light of the burden of preserving railroad documents. (Id.) As the panel reasoned, "given the need for extensive and accurate car movement data, and the inherent difficulty involved in reconstructing a sequence of car movements when investigating a claim for reclaim of car hire, [the 10-year limit for submitting claims] would, in our view, effectively preclude a railroad from properly investigating and determining the validity of a claim submitted to it." (Id.)

Instead, the panel looked to industry practice to supply a reasonable time limit. A suitable time limit appeared in Rule 13.B.1 of the American Railroads' Code of Car Hire Rules (the "Car Hire Rules"). Rule 13.B.1 establishes a five-month period in which to submit claims. (Id. at 4.) To justify borrowing this time limit, the panel opined that "[i]t is reasonable to infer that the railroads, in establishing these claim periods, took into account the complexities involved in processing claims for car hire reclaim, including the timely need for complete and accurate data." (Id.) Both Conrail and SouthShore are voluntary subscribers to the Car Hire Rules (as are virtually all rail

carriers in the United States and Canada). In light of the five-month time period borrowed by the panel, Conrail's claims were untimely and therefore time-barred. (Id. at 4-5.)

On March 20, 2001, Conrail filed in federal court a motion to vacate the arbitration award. Each party filed simultaneous motions for summary judgment – Conrail to vacate the award, and SouthShore to confirm it.

## DISCUSSION

Judicial review of commercial arbitration awards is extremely limited. See Baravati v. Josephthal, Lyon & Ross Inc., 28 F.3d 704, 706 (7th Cir. 1994) (stating that "perhaps it ought not be called 'review' at all"). The principle behind this limited review is to preserve the parties' original intentions. As the Seventh Circuit explains, "[b]y including an arbitration clause in their contract the parties agree to submit disputes arising out of the contract to a nonjudicial forum, and we do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision." Id. Accordingly, federal courts may overturn an arbitrator's decision only on the narrow grounds set out in the Federal Arbitration Act ("FAA"). 9 U.S.C. § 10(a).

One of those narrow grounds exists when an arbitrator's award exceeds his or her authority. 9 U.S.C. § 10(a)(4); see Flexible Mfg. Systems Pty. Ltd. v. Super Prods.

Corp., 86 F.3d 96, 99 (7th Cir. 1996). Arbitral authority is born in contract, after all, thereby limiting judicial review to examining whether the arbitrator exceeded this contractual authority. See Northern Indiana Pub. Serv. Co. v. United Steelworkers of Am., AFL-CIO-CLC, 243 F.3d 345, 346 (2001) (hereinafter "NIPSCO") (citing American Postal Workers Union v. Runyon, 185 F.3d 832, 835 (7th Cir. 1999)). This examination requires us to determine whether the arbitral award "draws its essence from the contract." Jasper Cabinet Co. v. United Steelworkers of Am., AFL-CIO-CLC, Upholstery and Allied Div., 77 F.3d 1025, 1028 (7th Cir. 1996). Put otherwise, the question is whether the arbitrators were engaged in the permissible, indeed expected, act of interpreting the contract. See id. If they were, the courts are powerless to vacate – even if they believe the award was factually or legally incorrect. See NISCO, 243 F.3d at 346 (citing ANR Advance Transp. Co. v. International Brotherhood of Teamsters, 153 F.3d 774, 778 (7th Cir. 1998)).

In NIPSCO, the Seventh Circuit confirmed an arbitral award favoring the union. See 243 F.3d at 348. The union and the employer had negotiated under the collective bargaining agreement a "Productivity Reward Plan" ("PRP") designed to increase productivity and reduce costs by doling out bonuses. See id. at 346. The bonuses were calculated according to the employer's stock earnings per share and pre-tax operating income. See id. At the heart of the PRP was a chart. See id. In 1997 the company's

pre-tax operating income went off the chart – literally – raising a novel question as to how to calculate bonuses. See id. Predictably, the employer contended that the chart capped bonuses at the amount listed at the farthest right-hand corner of each matrix. See id. The union disagreed. See id.

The employer appealed the arbitrator's award in favor of the union. See id. The award did not draw its essence from the contract, said the employer, because the arbitrator ignored the plain and unambiguous language of the PRP in order to add a term that the union had failed to secure during negotiations. See id. at 348. The chart clearly indicated a cap at the farthest right-hand boxes and furnished no method to calculate bonuses beyond those boxes. See id. Thus, by reading a computation provision into the PRP, the arbitrator added a term to the contract in violation of the authority granted to him through the collective bargaining agreement. See id.

Rejecting the employer's argument, the Seventh Circuit agreed with the district court that the arbitrator engaged in contract interpretation. See id. Although the arbitrator was not empowered to add terms to the PRP, arbitrators are empowered to fill gaps left in contracts. See id. That the arbitrator's interpretation may have been unsound is not enough to overturn the decision. See id. Instead, as long as the award "is based on the arbitrator's interpretation – unsound though it may be – of the contract, it draws its essence from the contract." Id. (quoting Ethyl Corp. v. United Steelworkers

of Am., 768 F.2d 180, 185 (7th Cir. 1985)). Only if the arbitrator's reasoning was not a possible interpretive route can the award be vacated. See id.

We cannot vacate the award before us because the arbitrators followed a viable interpretive route to arrive at the result. As a threshold matter, the contract vested the arbitrators with broad powers. It provided that

> If at any time a dispute shall arise concerning any matter or thing herein mentioned or contemplated, the same shall be referred to a Board of Arbitration composed of disinterested and competent men. . . . [T]he decision of such arbitrators or a majority of them . . . shall be final and conclusive and binding upon the parties to such dispute.

(Exh. B to Conrail's Mtn. to Vac. Arb. Awd. at CR 00032-33.) This provision places no limitation on the arbitrator's ability to resolve disputes arising from the contract. Its broad language stands in contrasts to many collective bargaining agreements which place express limits on an arbitrator's authority to add to an agreement. See, e.g., NIPSCO, 243 F.3d at 348 (collective bargaining agreement expressly prohibited arbitrators from adding term to contract); Jasper, 77 F.3d at 1027 (agreement empowered arbitrator to "interpret and/or apply any of the terms of this Agreement" but not to "alter, modify, eliminate, add to or remove any part or parts of this Agreement").

Nothing in the arbitrators' decision indicates that they acted outside of this broad authority. Rather, the arbitrators merely interpreted the contract before them. Finding

a gap in the operative provision, they sought to fill it. In doing so, they looked to prevailing industry standards. Ultimately they borrowed from the universally accepted Car Hire Rules. Their reasoning follows the contours of classic contract interpretation. Accordingly, Conrail cannot carry its weighty burden of convincing us that the arbitrators' reasoning was not a possible interpretive route. See NIPSCO, 243 F.3d at 348.

Conrail argues that the arbitrators exceeded their authority by impermissibly relying on the Car Hire Rules that went beyond the contract. We disagree. The arbitrators did not add a provision to the contract; they merely filled in a gap. It was the parties, not the arbitrators, who crafted the reclaim clause. That clause was an express term of the agreement. As is true of most contracts, the clause had an implied term – the timing of submission of claims for reclaims. The authority of the arbitrator to interpret a contract includes the power to discover implied terms. See Jasper, 77 F.3d at 1029.

Along with challenging the arbitrators' reliance on the Car Hire Rules, Conrail contends that Car Hire Rule 13.B.1 does not and cannot apply to the facts in the instant case. Even if this were the case, it is irrelevant. At no point in the decision did the arbitrators express a belief that Car Hire Rule 13.B.1 governed the instant dispute. Instead, in support of the adoption of this timing provision, the panel concluded that

"[i]t is reasonable to infer that the railroads, in establishing these claim periods, took into account the complexities involved in processing claims for car hire reclaim, including the timely need for complete and accurate data." By filling a gap in the contract with this timing provision, the arbitrators signaled their approval of the underlying reasoning – not their belief that the Rule itself applied to the facts before them.

We conclude that the arbitrators merely interpreted the contract presented to them and filled in an implied term. Consequently, they did not act in excess of their authority and the arbitration award should stand.

## CONCLUSION

For the foregoing reasons, we grant SouthShore's motion for summary judgment and deny Conrail's motion for summary judgment.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: July 18, 2001